ACCEPTED
01-15-00163-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
9/21/2015 2:49:51 PM
CHRISTOPHER PRINE
CLERK

## CASE NO. 01-15-00163-CV

## IN THE FIRST COURT OF APPEALS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

9/21/2015 2:49:51 PM

CHRISTOPHER A. PRINE
Clerk

## XIANGXIANG TANG
### Appellant

## V.

## KLAUS WIEGAND
### Appellee

## ON APPEAL FROM THE 268TH DISTRICT COURT OF FORT BEND COUNTY, TEXAS, THE HONORABLE JOHN HAWKINS PRESIDING

## BRIEF OF APPELLANT
## XIANGXIANG TANG

**WAUSON ♦ PROBUS**
**John Wesley Wauson**
**Texas Bar No. 20988200**
**jwwauson@w-plaw.com**
**One Sugar Creek Center Blvd., Suite 880**
**Sugar Land, Texas 77478**
**(281) 242-0303 (Telephone)**
**(281) 242-0306 (Telecopy)**
**Attorneys for Appellant**

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to Rule 38.1(a), TEX. R. APP. P., the following is a complete list of the names of all parties interested in the outcome of this Case:

Appellant: Xiangxiang Tang

Appellant's Trial
and Appellate Counsel: John Wesley Wauson
Wauson ♦ Probus
One Sugar Creek Center Blvd., Suite 880
Sugar Land, Texas 77478

Appellee: Klaus Wiegand

Appellee's Trial
and Appellate Counsel: John P. Venzke
The Venzke Law Firm
Post Office Box 667485
Houston, Texas 77266-7485

# TABLE OF CONTENTS

                                                                              **Page**

Identity of Parties and Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   i

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ii

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iv

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   vi

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . .   vii

Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   viii

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

    APPELLANTS' POINT OF ERROR ONE:   The trial court
    erred in failing to enter Judgment that Wiegand have and
    recover nothing against Tang on the Texas Theft Liability Act
    claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

    APPELLANTS' POINT OF ERROR TWO:  The trial court
    erred in failing to award a judgment for attorney's fees to
    Xiangxiang Tang as a successful party under the Texas Theft
    Liability Act, §134.005(2)(b) against Klaus Wiegand who
    unsuccessfully brought claims . . . . . . . . . . . . . . . . . . . . . . . .   4

    APPELLANTS' POINT OF ERROR THREE:  The trial court
    erred when it failed to award Plaintiff attorney's fees against
    Klaus Wiegand for trial of this case in defense of the TTLA
    claims based on the uncontroverted evidence of such fees . . .   9

    APPELLANTS' POINT OF ERROR FOUR:  The court erred
    in not granting Plaintiff a new trial because failure to award
    Plaintiff any trial attorney's fees against Klaus Wiegand under

the evidence, pleadings of the parties, and the matters in issue, is against the great weight and preponderance of the evidence and would be inconsistent with conclusive evidence of some amount of such fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Appendix . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Attached

      Tab 1      Judgment signed November 24, 2014

      Tab 2      Jury Charge and Verdict

      Tab 3      *Moak v. Huff,* No. 04-11-00184-CV, 2012 Tex. App. LEXIS 1245 (Tex. App.–San Antonio February 15, 2012)

# INDEX OF AUTHORITIES

**Cases**                                                                                **Page**

*7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*,
    245 S.W.3d 488, 509 (Tex. App.—Houston [14th Dist.]
    2007, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*Air Routing Int'l Corp. (Canada) v. Britannia Airways, Ltd.*,
    150 S.W.3d 682, 686 (Tex. App.—Houston [14th Dist.]
    2004, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*Arrow Marble, LLC v. Killion*,
    441 S.W.3d 702, (Tex.App.—Houston [1st Dist.] 2014) . . .  9

*Beach v. Resolution Trust Corp.*,
    821 S.W.2d 241, 245 (Tex. App.—Houston [1st Dist.]
    1991, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Bocquet v. Herring*,
    972 S.W.2d 19, 20 (Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . .  7

*Brown v. Kleerekoper*,
    2013 Tex. App. LEXIS 2122 (Tex.App.—Houston
    [1st Dist.] Mar. 5, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*Dow Chem. Co. v. Francis*,
    46 S.W.3d 237, 242 (Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . .  13

*Englander Co. v. Kennedy*,
    428 S.W.2d 806, 807 (Tex. 1968) . . . . . . . . . . . . . . . . . . . . . .  4

*Glover v. Tex. Gen. Indem. Co.*,
    619 S.W.2d 400, 401-02 (Tex. 1981) . . . . . . . . . . . . . . . . . . .  13

*Holland v. Wal-Mart Stores, Inc.*,
    1 S.W.3d 91, 94 (Tex. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*In re American Homestar of Lancaster, Inc.*,
    50 S.W.3d 480,483 (Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . .  4

**Cases:** **Page**

*In re Moers,*
104 S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.]
2003, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Moak v. Huff,*
No. 04-11-00184-CV, 2012 Tex. App. LEXIS 1245
(Tex. App.– San Antonio February 15, 2012) . . . . . . . . . . . 8

*Thomas v. Goodman,*
No. 04-07-00531-CV, 2008 Tex. App. LEXIS 4933, 2008
WL 2602120, at *4 (Tex. App.—San Antonio July 2, 2008,
pet. denied) (mem. op.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Tony Gullo Motors I, L.P v. Chapa,*
212 S.W.3d 299, 313 (Tex. 2006) . . . . . . . . . . . . . . . . . . . . 10, 12

*Trevino v. Houston Orthopedic Center,*
831 S.W 2d 341, 344 (Tex. App. – Houston [14th Dist.]
1992, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Varner v. Cardenas,*
218 S.W.3d 68, 69 (Tex. 2007) (citing *Tony Gullo Motors I,
L.P v. Chapa,* 212 S.W.3d 299, 313 (Tex. 2006)) . . . . . . . . . . 10

**Statutes:**

§134.001, Tex. Civ. Prac. & Rem. Code . . . . . . . . . . . . . . . . . . . . . 7

§134.005(2)(b), Tex. Civ. Prac. & Rem. Code . . . . . . . . . . . . . . . . 2, 3, 14

Rule 162, Tex. R. Civ. P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Rule 165, Tex. R. Civ. P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

All references to the Clerk's Record will be cited as (CR p. __).

All references to the Court Reporter's Record will be cited as (RR p. __, l. __)

## STATEMENT OF THE CASE

This case was commenced on December 10, 2013 by Plaintiff, Xiangxiang ("Andy") Tang (CR p. 8). The case proceeded to trial on Plaintiff's First Amended Petition and Application for Temporary Restraining Order and Temporary and Permanent Injunction (CR p. 57). The suit was a partnership dispute between Tang and her partner, Defendant Yvonne Tran ("Tran") and also involved Defendant Klaus Wiegand ("Wiegand"). The pleadings sought injunctive relief to prevent dissipation of assets of the company and raised claims of breach of contract, breach of fiduciary duty, conversion, fraud, conspiracy and alleged violations of the Texas Theft Liability Act. Tran and Wiegand counterclaimed raising identical claims each of their pleadings, including their Third Amended Original Answer and Counterclaim. (CR p.113). Tang answered. (CR p. 127).

On September 16, 2014 the parties agreed to the trial assignment of this case to the Hon. John M. Hawkins, Associate Judge to the 268th Judicial District Court (CR p. 132). Jury trial commenced thereafter. The jury returned a verdict on September 19, 2014. (CR p. 135). Final Judgment was signed on November 24, 2014. (CR p. 318). Tang filed a Motion for New Trial as to Wiegand only on December 23, 2014. (CR p. 325).Tang filed her Notice of Appeal on February 19, 2015. (CR p. 328).

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant believes that oral argument in this case would be necessary and helpful to this Court.

# ISSUES PRESENTED

## (Statement of Points of Error)

**APPELLANTS' POINT OF ERROR ONE:** The trial court erred in failing to enter Judgment that Wiegand have and recover nothing against Tang on the Texas Theft Liability Act claims;

**APPELLANTS' POINT OF ERROR TWO:** The trial court erred in failing to award a judgment for attorney's fees to Xiangxiang Tang as a successful party under the Texas Theft Liability Act, §134.005(2)(b) against Klaus Wiegand who unsuccessfully brought claims.

**APPELLANTS' POINT OF ERROR THREE:** The trial court erred when it failed to award Plaintiff attorney's fees against Klaus Wiegand for trial of this case in defense of the TTLA claims based on the uncontroverted evidence of such fees.

**APPELLANTS' POINT OF ERROR FOUR:** The court erred in not granting Plaintiff a new trial because failure to award Plaintiff any trial attorney's fees against Klaus Wiegand under the evidence, pleadings of the parties, and the matters in issue, is against the great weight and preponderance of the evidence and would be inconsistent with conclusive evidence of some amount of such fees.

# STATEMENT OF FACTS

Wiegand, in his original answer and counterclaim, and every version of it, including the third amendment just prior to trial, asserted claims against Xiangxiang Tang under the Texas Theft Liability Act. (CR p. 89, 101, 113) The same claims were made against Tang by Tran, jointly in the same pleadings with Wiegand. (CR p. 89, 101, 113) Tang answered requesting her attorneys' fees. (CR p. 127, 129) Tang also requested an award of attorneys' fees in her original Petition and Application for Temporary Restraining Order and Temporary and Permanent Injunction. (CR p. 8, 30) Tran submitted jury questions on each of her claims, except fraud, including: breach of contract, breach of fiduciary duty, money had and received, and under the Texas Theft Liability Act. Wiegand never non-suited his identical claims (RR Vol. 5, p. 48, 56; RR-hrg 11-14-14, p. 56, l. 37 – p.57, l. 5); he also submitted no jury questions (RR Vol. 5, p, 4-37), leaving only Tran to submit questions on those claims. The jury returned a verdict against Tran on all issues, and specifically answered the Texas Theft Liability Act questions, Jury Question No. 19 - "No". Tang was the prevailing party as to both Tran and Wiegand's Texas Theft Liability Act claims. Tang ultimately moved for Judgment on the verdict against Tran, including judgment for attorneys' fees under various theories, including the Texas Theft Liability Act claim. (CR p. 174, 242) Tang also moved for judgment against Wiegand, that he recover nothing under the Theft Liability Act and other

1

claims, and proposed a judgment reflecting this (CR p. 174 and CR. p. 211). Tang included as a basis for her request for fees that she was a prevailing party under the Texas Theft Liability Act and again sought a Judgment that Wiegand also have and recover nothing from her on his claims. The Court refused to award the attorneys' fees against Wiegand and in favor of Tang (RR-hrg 11-14-14, p. 37, l. 20 – p.52, l. 5) and the Court refused to enter Judgment that Wiegand have and recover nothing on his Texas Theft Liability Act claims and on the other claims he continued to pursue through trial. (RR-hrg 11-14-14, p. 57, l. 6 – l. 25).

## SUMMARY OF THE ARGUMENT

The Trial Court erred in failing to enter a Judgment (1) that included an order that Wiegand recover nothing on the Texas Theft Liability Act claims against Tang and (2) that awarded attorneys' fees to Tang against Wiegand under the Texas Theft Liability Act, §134.005(2)(b), Tex. Civ. Prac. & Rem. Code, since Tang was a prevailing party in connection with such claims. Wiegand sued Xiangxiang Tang under the Texas Theft Liability Act in each of his original, first amended, second amended and third amended answers and counterclaims. Wiegand failed to produce any evidence to support the Texas Theft Liability Act claims. Wiegand failed to dismiss his claim and failed to present jury questions on that claim. Tang, therefore, was the prevailing party on the Texas Theft Liability Act claims by Wiegand. The Jury found that the reasonable fees for Tang's counsel's services through trial was

2

$55,165.88. Tang was entitled to recover these fees under §134.005(2)(b), Tex. Civ. Prac. & Rem. Code.

In view of these errors, Tang seeks a modification or reformation of the Judgment (1) to reflect that she prevailed on Wiegand's Texas Theft Liability Act claims and that he have and recover nothing from her on any claims and (2) rendering Judgment that she have and recover from Wiegand, as a prevailing party under §134.005(2)(b), Tex. Civ. Prac. & Rem. Code, her attorney's fees of $55,165.88, plus post judgment interest at the Judgment rate, plus costs, and that such award be joint and several with the award of attorney's fees and costs awarded against Tran.

Alternatively, the Court erred in refusing to grant Tang's Motion for New Trial on the sole issue of the award of attorney's fees against Wiegand and in favor of Tang under §134.005(2)(b), Tex. Civ. Prac. & Rem. Code, since to award no fees would be against the great weight and preponderance of the evidence and the evidence conclusively established such fees, including segregation and exclusion of fees that could not be awarded. The fees awarded are some evidence of the amount of the fees that should have been awarded. The Court should therefore remand the case for entry of the appropriate judgment for reasonable and necessary attorneys' fees after consideration of additional evidence of the appropriate amount of a fee award.

# ARGUMENT

## Standard of Review

The Trial Court has no discretion in determining what the law is or in applying the law to the facts; therefore, the Trial Court's failure to analyze or apply the law correctly is an abuse of discretion. *In re American Homestar of Lancaster, Inc.*, 50 S.W.3d 480,483 (Tex. 2001); The Court of Appeals reviews the Trial Court's conclusions of law de novo. *In re Moers*, 104 S.W.3d 609, 611 (Tex. App. - Houston [1st Dist.] 2003, pet. ref'd). The Trial Court's legal analysis is evaluated independently to determine correctness. *Id.* The availability of attorney's fees under a particular statute is a question of law for the court. *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999). Finally, appellant bears the burden of establishing error in the Trial Court's judgment. *Englander Co. v. Kennedy*, 428 S.W.2d 806, 807 (Tex. 1968); *Trevino v. Houston Orthopedic Center,* 831 S.W 2d 341, 344 (Tex. App. – Houston [14th Dist.] 1992, writ denied).

**APPELLANTS' POINT OF ERROR ONE:** **The trial court erred in failing to enter Judgment that Wiegand have and recover nothing against Tang on the Texas Theft Liability Act claims.**

**APPELLANTS' POINT OF ERROR TWO: The trial court erred in failing to award a judgment for attorney's fees to Xiangxiang Tang as a successful party under the Texas Theft Liability Act, §134.005(2)(b) against Klaus Wiegand who unsuccessfully brought claims.**

4

**Judgment Must be Entered on the Texas Theft Liability Act Counter-Claims.**

Klaus Wiegand, Yvonne Tran, and L.T.L. Medspa, Inc. all filed counterclaims against Xiangxiang Tang. (CR p. 89, 101, 113)   The counter-plaintiff, Klaus Wiegand, acknowledged in his testimony that he had a complete lack of evidence to support any claim or any reason to file a counterclaim, including the theft allegation underlying his Texas Theft Liability Act counterclaim, (RR Supp. (filed September 18, 2015) Klaus Wiegand testimony; p. 11, line 14 – p. 15, line 1). His claims were frivolous with no basis in fact or law. Wiegand never non-suited his identical claims without prejudice under Rule 162, Tex. R. Civ. P., which he was required to do before the close of all the evidence (RR Vol. 5, p. 48, 56; RR-hrg 11-14-14, p. 56, l. 37 – p. 57, l. 5); he also submitted no jury questions (RR Vol. 5, p. 4-37), leaving only Tran to submit questions on those claims.  Wiegand never non-suited (Rule 162) or abandoned (Rule 165) his Texas Theft Liability Act claims or his other causes of action. Rule 165, Tex. R. Civ. P., provides the mechanism for a party to show that a cause of action is not tried on the merits. There is no notation in the docket sheet (CR p. 339) of a non-suit or abandonment of Wiegand's claims as both Rules would provide. Since there is no record that the claims were not tried, the implication is that they were. This should have resulted, as a matter of law, in denial of relief on the merits on all of Wiegand's counterclaims. Accordingly, it was error for the Trial Court to refuse to or fail to enter judgment that Klaus Wiegand have

and recover nothing against Xiangxiang ("Andy") Tang on his Texas Theft Liability Act claims. Tang was the prevailing party under that statutory counter-claim. Judgment should be rendered accordingly for her attorneys' fees and costs.

## Attorneys Fee Should Have Been Awarded

Tang is entitled to a judgment for attorney fees of $55,165.88 found by the jury in Question 3. This figure was the result of segregation and exclusion of fees incurred in connection with the tort claims. (CR p. 140). The attorneys' fees trial testimony by counsel was clear. All attorneys' fees that could be segregated were segregated – the testimony established a 25% reduction because of fees incurred in connection with the tort claims. The resulting 75% of total fees testified to was the attorney's fees figure that the jury awarded. The testimony concerning segregation made clear that the attorneys' fees testified to were incurred in connection with prosecuting Tang's affirmative claims and defending against the identical counter-claims brought by all the defendants. The testimony was also clear that the work done in relation to Tang's prosecution of her breach of contract claims and defending against the defensive counterclaims was not subject to further segregation. Tran and Tang's relationships in their business formed the basis and background for all their causes of action. The expert testimony established that only the work done on the tort claims could be segregated. This reduced the billed fees by 25%; the remaining fees could not otherwise be segregated. (RR Vol. 4, p. 28, l. 13 – p. 30, l. 9). For

example, the identical counter-claims by Wiegand and Tran were the antithesis of and the counter to the position of Tang on her claims. Tran actually submitted her Theft Liability Act Claims to the jury and was unsuccessful. (See, Jury Question No. 17; CR p. 154). Wiegand was unsuccessful because he never had any such claims and apparently asserted them as an impediment to Tang's claims.

Since Wiegand and Tran pleaded a cause of action under the Texas Theft Liability Act, §134.001, et seq., of the Tex. Civ. Prac. & Rem. Code, and did not prevail, Tang is entitled to her attorney's fees recovery from them. The Theft Liability Act is a double-edged sword. It provides in §134.005(b) as follows: "Each person who prevails in a suit under this chapter **<u>shall</u>** be awarded court costs and reasonable and necessary attorney's fees." (emphasis supplied). The award of attorney's fees under this section to the prevailing party is mandatory. *See Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) (statutes providing that a party "may recover," "shall be awarded," or "is entitled to attorney's fees" are not discretionary). Texas Courts have specifically held that such recovery is mandatory under this statute and that when a claimant fails to win, the defendant (or counter-defendant) is the prevailing party. In fact, this Court has held that the statute requires the court to award attorney's fees to a prevailing defendant "without any prerequisite that the claim is found to be groundless, frivolous, or brought in bad faith." *Air Routing Int'l*

7

*Corp. (Canada) v. Britannia Airways, Ltd.*, 150 S.W.3d 682, 686 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

In refusing to award fees to Tang under the Texas Theft Liability Act, the Trial Court appears to have mistakenly applied a recent holding in *Moak v. Huff,* No. 04-11-00184-CV, 2012 Tex. App. LEXIS 1245 (Tex. App. – San Antonio February 15, 2012). (RR-hrg 11-14-14 (VOL 01 of 1) p. 50, l. 1 – p. 52, l. 5). The Trial Court apparently felt uncomfortable about awarding the attorney's fees jointly and severally against Wiegand (as well as Tran) since Tang was not successful on her claim for conspiracy to breach fiduciary duties against Wiegand. Tang obtained a jury answer (Question No. 6; CR p. 143) that Wiegand was involved in a conspiracy with Tran that harmed Tang, but the jury found $0 damages in its answer to Question No. 7. (CR p. 144) Nevertheless, this is precisely the situation in which *Moak* would provide that Tang **can** recover her attorney's fees as the prevailing party to the Theft Liability Act counter-claim by Wiegand. In that case, Moak was a defendant and lost to Huff on Huff's claim under the DTPA for damages; Moak, however, was the prevailing party on a part of Huff's case where she successfully defended a Theft Liability Act claim. The trial court refused to award Moak's fees incurred in connection with the defense of the claim. The Court of Appeals in *Moak* reversed and remanded for Moak to prove up her fees, holding as follows:

> "We hold that a person who prevails in a TTLA cause of action is entitled to recover the reasonable fees necessarily incurred prosecuting

or defending that cause of action, even if the party is unsuccessful on other claims and counterclaims litigated in the same suit."

This is a correct statement of the law and has been routinely follow by other Courts of Appeal. *See e.g., Arrow Marble, LLC v. Killion*, 441 S.W.3d 702, (Tex.App.—Houston [1st Dist.] 2014); *Brown v. Kleerekoper*, 2013 Tex. App. LEXIS 2122 (Tex.App.—Houston [1st Dist.] Mar. 5, 2013).

Accordingly, since Tang prevailed upon the counter-claim asserted by both Wiegand and Tran under the Texas Theft Liability Act she is entitled to the award of fees from both. Since the pleading and prosecution of the claim by both was joint, the liability should be joint and several. Yvonne Tran and Klaus Wiegand should be held jointly and severally liable to Xiangxiang Tang for her reasonable and necessary attorney's fees incurred of $55,165.88 and for costs of Court. Judgment should be rendered accordingly.

**APPELLANTS' POINT OF ERROR THREE:** **The trial court erred when it failed to award Plaintiff attorney's fees against Klaus Wiegand for trial of this case in defense of the TTLA claims based on the uncontroverted evidence of such fees.**

**APPELLANTS' POINT OF ERROR FOUR:** **The court erred in not granting Plaintiff a new trial because failure to award Plaintiff any trial attorney's fees against Klaus Wiegand under the evidence, pleadings of the parties, and the matters in issue, is against the great weight and preponderance of the evidence and would be inconsistent with conclusive evidence of some amount such fees.**

The reason for the Trial Court's refusal to award fees was not clear. Tang filed a Motion for New Trial asserting her right to a new trial on the fee issues since it

9

was undisputed that there was evidence that fees were expended by her in defense of the joint claims by both Tran and Wiegand under the Texas Theft Liability Act. The Motion was overruled by operation of law. To the extent of any issue about the quantum of evidence of attorney's fees, a new trial should be granted to establish the amount of reasonable and necessary fees to be awarded against Wiegand.

A party who prevails on a cause of action for which fees are recoverable must prove the fees that were necessary for the litigation of that claim. "[A] prevailing party must segregate recoverable from unrecoverable attorney's fees in all cases." *Varner v. Cardenas*, 218 S.W.3d 68, 69 (Tex. 2007) (citing *Tony Gullo Motors I, L.P v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006)). In *Tony Gullo*, the Texas Supreme Court "reestablished the rule that attorney's fees are recoverable only if necessary to recover on a contract or statutory claim allowing them, and eliminated the exception for fees incurred solely on separate but arguably intertwined claims." *Varner*, 218 S.W.3d at 69 (citing *Tony Gullo*, 212 S.W.3d at 313). The limited exception to the duty to segregate applies only "when discrete legal services advance both a recoverable and unrecoverable claim." *Tony Gullo*, 212 S.W.3d at 313-14. The party seeking fees bears the burden of demonstrating the exception applies. *Id.* at 314; *Thomas v. Goodman*, No. 04-07-00531-CV, 2008 Tex. App. LEXIS 4933, 2008 WL 2602120, at *4 (Tex. App.—San Antonio July 2, 2008, pet. denied) (mem. op.). "If any of the component tasks relate solely to a cause of action for which legal fees are

not recoverable, the claimant must segregate the fees." *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 509 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

Tang's attorney's fee testimony met these requirements. Tang's attorney, Wes Wauson, testified about the hourly rates of her attorneys, and the overall amount of her reasonable and necessary attorney's fees incurred in connection with the suit through trial – a total of $73,554.50 on an hourly fee basis. The expert fee testimony established that the work performed on the tort claims could be and must be segregated. (RR Vol. 4, p. 28, l. 13 – p. 30, l. 9)  He testified that fees for claims for which recovery was not available to Tang under any theory (including the breach of fiduciary duty and conspiracy claims) would be segregated and excluded by a reduction of the fees by 25%. The testimony was also clear that the work done in relation to Tang's prosecution of her breach of contract claims and defending against the defensive counterclaims was not subject to further segregation. The relationships of Tran and Tang in their business formed the basis and background for all their causes of action. The fees were segregated and the billed fees reduced by 25%. Counsel opined that the reduction would account for unrecoverable fees. (RR Vol. 4, p. 28, l. 13 – p. 30, l. 9) The reduced amount of reasonable and necessary fees testified to through trial after removal of amounts related to unrecoverable tort claim work was $55,165.88. The jury awarded this exact amount in Jury Question No. 3.

11

(CR p. 140) It should be noted that Wiegand's testimony reflects that his Theft Liability Act claim was frivolous but apparently was brought to raise an impediment to Tang's claims. (RR Supp. (filed September 18, 2015) Klaus Wiegand testimony; p. 11, line 14 – p. 15, line 1). In addition, the identical counter-claims by Wiegand and Tran were the antithesis of and the counter to the position of Tang on her claims.

Tang and Wiegand's counsel had counsel's billing records available for cross examination but did not cross examine Tang's counsel on the opinions after he testified. Neither side offered the billing records as Exhibits. There was no objection to the Jury Question inquiring "What is a reasonable fee for the necessary services of Xiangxiang ("Andy") Tang's attorney, stated in dollars and cents?" The Jury's finding was the exact amount of counsel's opinion and there was adequate evidence to support it. Judgment should be rendered in Tang's favor for those fees.

Nevertheless, if the Court determines that the segregation was not adequate or complete and that Tang did not conclusively establish the amount of her recovery through the Jury's verdict, she is still entitled to recover the reasonable and necessary attorney's fees incurred in defending the claim. The Texas Supreme Court has acknowledged that "unsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be." *Tony Gullo*, 212 S.W.3d at 314. Certainly attorney's fees, like those in this case, that have been segregated in substantial part are some evidence of the amount that should be awarded. To award

nothing would be against the great weight and preponderance of the evidence and would be unjust. *See, Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) ("When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence.") In addition, Tang's alternative prayer for relief seeks remand, which is the proper remedy for factual insufficiency. Compare *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401-02 (Tex. 1981) (holding that remand for new trial is remedy for factual insufficiency of evidence) with *Beach v. Resolution Trust Corp.*, 821 S.W.2d 241, 245 (Tex. App.—Houston [1st Dist.] 1991, no writ) (holding that rendition is remedy only for no evidence).

## CONCLUSION

The record is clear that the Trial Court erred in failing to enter in the Judgment that Klaus Wiegand have and recover nothing over and against Xiangxiang Tang on his claims against her under the Texas Theft Liability Act, for fraud, for conversion, for breach of contract, for breach of fiduciary duty, and for declaratory judgment. Judgment should be so rendered. Since Tang was the prevailing party on Wiegand's Texas Theft Liability Act claims, she was entitled to an award of reasonable and necessary attorneys' fees in a sum of $55,165.88, as the jury so found were the fees incurred by her counsel. The Court erred in failing to award those fees in the

Judgment. Judgment should be rendered that Tang have and recover such fees and costs of court against Wiegand, and that such fees and costs of court should be awarded jointly and severally, with the identical fees and costs awarded against Yvonne Tran.

In the alternative, to the extent that the fee award and the segregation of fees at trial are determined to be insufficient in some respect, the Court erred in granting the motion for new trial and a new trial should be granted to allow Tang to supplement the testimony in evidence to establish the amount of the attorneys' fees and costs to be awarded to her under the Texas Theft Liability Act, in particular, §134.005(2)(b), Tex. Civ. Prac. & Rem. Code.

## PRAYER

This Court should sustain the Appellant's Points of Error One and Two and modify, restate or render a judgment that Klaus Wiegand have and recover nothing over and against Xiangxiang Tang on his claims against her under the Texas Theft Liability Act, for fraud, for conversion, for breach of contract, for breach of fiduciary duty, and for declaratory judgment. In sustaining Point of Error Two, Appellant prays that the Court render Judgment in favor of Xiangxiang Tang against Klaus Wiegand for attorneys' fees of $55,165.88, plus all costs of court, with such judgment to be joint and several with the identical fees and expenses for which judgment was rendered against Yvonne Tran.

14

In the alternative, to the extent that the Court finds that the attorneys' fees have not been fully segregated, Tang requests that the Court sustain Points of Error Three and Four, and that the portion of this case concerning only the amount of attorneys' fees to be awarded to Xiangxiang Tang against Klaus Wiegand be remanded to the trial court for a trial on the amount of such fees. The Court should award such other and additional relief to which Xiangxiang Tang is entitled.

Respectfully submitted,

**WAUSON ♦ PROBUS**

By: ___/s/ John Wesley Wauson___
       **John Wesley Wauson**
       State Bar No. 20988200
       jwwauson@w-plaw.com
One Sugar Creek Center Blvd., Suite 880
Sugar Land, Texas 77478
(281) 242-0303 (Telephone)
(281) 242-0306 (Facsimile)

*ATTORNEYS FOR APPELLANT*
*XIANGXIANG TANG*

## CERTIFICATE OF COMPLIANCE

1.  This Appellant's brief complies with the type-volume limitation of Texas Rule of Appellate Procedure 9.4(i)(2)(B). This brief contains 3,723 words, excluding the parts of the brief exempted by Texas Rule of Appellate Procedure 9.4(i)(1).

2.  This Appellant's brief complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point font Times New Roman.

*/s/ John Wesley Wauson*_____
John Wesley Wauson

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to the following counsel of record by the Court's electronic filing system and/or U.S. Mail on this 21st day of September, 2015.

*/s/ John Wesley Wauson*_____
John Wesley Wauson

# APPENDIX

# TAB 1

13-DCV-211293
FIJJ
Final Judgment by Jury Verdict
3316265

Filed
11/17/2014 12:08:22 PM
Annie Rebecca Elliott
District Clerk
Fort Bend County, Texas
Ariana Salazar

CAUSE NO. 13-DCV-211293

| | | |
|---|---|---|
| XIANGXIANG TANG, Individually | § | IN THE DISTRICT COURT OF |
| and as a shareholder on behalf of | § | |
| L.T.L. Medspa, Inc., | § | |
| | § | |
| VS. | § | FORT BEND COUNTY, TEXAS |
| | § | |
| YVONNE TRAN, KLAUS WIEGAND, | § | |
| AND L.T.L. MEDSPA, INC., | § | 268TH   JUDICIAL DISTRICT |

## FINAL JUDGMENT

On September 16, 2014, this case was called for trial.   Plaintiff, XIANGXIANG ("Andy")

TANG, appeared in person and through her attorney and announced ready for trial.   Defendants,

YVONNE TRAN and KLAUS WIEGAND, appeared in person and through their attorney and

announced ready for trial. Defendant, L.T.L. MEDSPA, INC. appeared through its corporate

representative, Yvonne Tran, and through its attorney and announced ready for trial.

After a jury was impaneled and sworn, it heard the evidence and arguments of counsel.   In

response to the jury charge, the jury made findings that the court received, filed, and entered of

record.   The questions submitted to the jury and the jury's findings are attached hereto as Exhibit

A and incorporated for all purposes by reference.

On October 3, 2014 Xiangxiang ("Andy") Tang filed her Motion for Entry of Judgment.

On October 27, 2014 and November 13, 2014 Xiangxiang ("Andy") Tang filed her Supplemental

Motions for Entry of Judgment The court, after review of the verdict, the Motion and Defendants'

response thereto, if any, is of the opinion the Motion should be granted and that judgment should

be rendered as follows. It is, therefore,

**ORDERED, ADJUDGED and DECREED** that the following parties take nothing on the

following claims submitted to the Jury:



1

318

XIANGXIANG ("Andy") TANG take nothing on conspiracy against KLAUS WIEGAND because the Jury found no damages;

YVONNE TRAN take nothing on breach of contract, breach of fiduciary duty, money had and received, and Texas Theft Liability Act.

It is further,

**ORDERED, ADJUDGED and DECREED** that XIANGXIANG ("Andy") TANG have and recover the sum of Thirty Three Thousand Six Hundred and 00/100 Dollars ($33,600.00) as past damages (see Verdict) and One Hundred Twenty-One Thousand Six Hundred and 00/100 Dollars ($121,600.00) as future damages (see Verdict) for a total of $155,200.00 from YVONNE TRAN. It is further,

**ORDERED, ADJUDGED and DECREED** that XIANGXIANG ("Andy") TANG have and recover the additional sum of Fifty-Five Thousand One Hundred Sixty-Five and 88/100 Dollars ($55,165.88) as attorneys' fees from YVONNE TRAN. It is further,

**ORDERED, ADJUDGED and DECREED** by the Court that post-judgment interest shall accrue at the rate of five percent (5%) per annum on the unpaid past damages portion of this judgment and attorneys' fees and costs, from the date the judgment is signed. It is further,

**ORDERED, ADJUDGED and DECREED** by the Court that all writs and processes issue as are necessary to the enforcement of this Judgment. It is further,

**ORDERED, ADJUDGED and DECREED** by the Court that XIANGXIANG ("Andy") TANG shall recover all costs of Court expended by her, including interpreter fees incurred at deposition, in connection with this matter.

All relief not expressly granted is denied.

This judgment is final, disposes of all claims and all parties and is appealable.

2

319

SIGNED this 24th day of ___November___, 2014.

_____
JUDGE PRESIDING

Approved as to form only:

**WAUSON ♦ PROBUS**

By: _____
      John Wesley Wauson
      State Bar No. 20988200
      jwwauson@w-plaw.com
      **Fred Hackett**
      State Bar No. 24001232
      fhackett@w-plaw.com
One Sugar Creek Center Blvd., Suite 880
Sugar Land, Texas 77478
281.242.0303 (Telephone)
281.24.0306 (Facsimile)
*Attorneys for Xiangxiang ("Andy") Tang*

**THE VENZKE LAW FIRM**

By: _____
      John P. Venzke
      State Bar No. 20546500
      jvenzke@comcast.net
Post Office Box 667485
Houston, Texas 77266-7485
(713) 522-1190 (Telephone)
(713) 559-0333 (Facsimile)

3

320

# APPENDIX

# TAB 2

| | | |
|---|---|---|
| XIANGXIANG TANG, Individually | § | IN THE DISTRICT COURT OF |
| and as a shareholder on behalf of | § | |
| L.T.L. Medspa, Inc., | § | |
| | § | |
| VS. | § | FORT BEND COUNTY, TEXAS |
| | § | |
| YVONNE TRAN, KLAUS WIEGAND, | § | |
| AND L.T.L. MEDSPA, INC., | § | 268TH  JUDICIAL DISTRICT |

## JURY CHARGE

MEMBERS OF THE JURY PANEL:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions.

1.    Do not let bias, prejudice, or sympathy play any part in your decision.

2.    Base your answers only on the evidence admitted in court and on the law that is in these instruction and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

ROUTED TO COURT SEP 2 2 2014 *lv*
RT'S TO D. CLERK  SEP 2 5 2014 *lv*

3.  You are to make up your own minds about the facts.  You are the sole judges of the credibility of the witnesses and the weight to give their testimony.  But on matters of law, you must follow all of my instructions.

4.  If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5.  All the questions and answers are important.  No one should say that any question or answer is not important.

6.  Answer "yes" or "no" to all questions unless you are told otherwise.  A "yes" answer must be based on a preponderance of the evidence [unless you are told otherwise]. Whenever a question requires an answer other than "yes" or "no", your answer must be based on a preponderance of the evidence [unless you are told otherwise].

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case.  If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no". A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence.  For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7.  Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision.  Answer each question carefully without considering who will win.  Do not discuss or consider the effect your answers will have.

8.  Do not answer questions by drawing straws or by any method of chance.

9.  Some questions might ask you for a dollar amount.  Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10.  Do not trade your answers.  For example, do not say, "I will answer this question your way if you answer another question my way."

11.  [Unless otherwise instructed] The answers to the questions must be based on the decision of at least 10 of the 12 jurors.  The same 10 jurors must agree on every answer.  Do not agree to be bound by a vote of anything less than 10 jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again.  This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial.  If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

*except that as to Questions 4 and 15, where you must answer "No" only if the preponderance of the evidence supports that answer.*

*Jerry*

2

JPV

136

A fact may be established by direct evidence or circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonable inferred from other facts proved.

---

**Presiding Juror**

1. When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.
2. The presiding juror has these duties:
   a. have the complete charge read aloud if it will be helpful to your deliberations;
   b. preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;
   c. give written questions or comments to the bailiff who will give them to the judge;
   d. write down the answers you agree on;
   e. get the signatures for the verdict certificate; and
   f. notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

**Instructions for Signing the Verdict Certificate**

1. Unless otherwise instructed you may answer the questions on a vote of 10 jurors. The same 10 jurors must agree on every answer in the charge. This means you may not have one group of 10 jurors agree on one answer and a different group of 10 jurors agree on another answer.
2. If 10 jurors agree on every answer, those 10 jurors sign the verdict.
   If 11 jurors agree on every answer, those 11 jurors sign the verdict.
   If all 12 of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.
3. All jurors should deliberate on every question. You may end up with all 12 of you agreeing on some answers, while only 10 or 11 of you agree on other answers. But when you sign the verdict, only those 10 who agree on **every** answer will sign the verdict.
4. There are some special instructions before Questions 1-22 explaining how to answer those questions. Please follow the instructions. If all 12 of you answer those questions, you will need to complete a second verdict certificate for those questions.

Do you understand these instructions? If you do not, please tell me now.

_____
Judge Presiding

3

137

## QUESTION 1

Did Yvonne Tran fail to comply with the partnership agreement?

Failure to comply may include repudiation of the agreement. A party repudiates an agreement when she indicates, by her words or actions, that she is not going to perform her obligations under the agreement in the future, showing a fixed intention to abandon, renounce, and refuse to perform the agreement.

Answer "Yes" or "No".

Answer: _____ YES _____

VOTES:    YES = 12

NO = 6

4

138

Answer Question No. 2 if you answered "Yes" to Question No. 1.

## QUESTION 2

What sum of money, if paid now in cash, would fairly and reasonably compensate Xiangxiang ("Andy") Tang for her loss, if any, that results from Yvonne Tran's failure to comply in Question 1?

Consider the following element of damages, if any, and none other.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any. Do not include in your answer any amount that you find Xiangxiang ("Andy") Tang could have avoided by the exercise of reasonable care.

You are instructed that any monetary recovery for the following is subject to income taxes.

Answer separately in dollars and cents for damages, if any.

a. net profits that Xiangxiang ("Andy") Tang should have received in the past but has not been paid

Answer in dollars and cents, if any :$    33,600.00

b. net profits that Xiangxiang ("Andy") Tang would receive in the future.

Answer in dollars and cents, if any :$    121,600

#2   UNANIMOUS by VOTE

5

139

## QUESTION 3

What is a reasonable fee for the necessary services of Xiangxiang ("Andy") Tang's attorney, stated in dollars and cents?

Answer with an amount for each of the following:

1.    For representation in the trial court.

Answer: $ _55,165.88_

140

# QUESTION 4

Did Yvonne Tran comply with her fiduciary duty to Xiangxiang ("Andy") Tang?

Because a relationship of trust and confidence existed between them, as Xiangxiang ("Andy") Tang's partner in the business, Yvonne Tran owed Xiangxiang ("Andy") Tang a fiduciary duty. To prove she complied with her duty, Yvonne Tran must show—

1.      the activities in question were fair and equitable to Xiangxiang ("Andy") Tang and the business.; and

2.      Yvonne Tran made reasonable use of the confidence that Xiangxiang ("Andy") Tang placed in her; and

3.      Yvonne Tran acted in the utmost good faith and exercised the most scrupulous honesty toward Xiangxiang ("Andy") Tang and the business; and

4.      Yvonne Tran placed the interests of Xiangxiang ("Andy") Tang and the business before her own, did not use the advantage of her position to gain any benefit for herself at the expense of Xiangxiang ("Andy") Tang and the business and did not place herself in any position where her self-interest might conflict with her obligations as a fiduciary; and

5.      Yvonne Tran fully and fairly disclosed all important information to Xiangxiang ("Andy") Tang concerning the business.

Answer "Yes" or "No."


Answer:___ _NO_____

UNANIMOUS Vote for NO

7

141

If you answered "No" to Question 4, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 5

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Xiangxiang ("Andy") Tang for her damages, if any, that were proximately caused by such conduct?

> "Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Consider the following elements of damages, if any, and none other.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any. Do not include in your answer any amount that you find Xiangxiang ("Andy") Tang could have avoided by the exercise of reasonable care.

You are instructed that any monetary recovery for the following is subject to income taxes.

Answer separately in dollars and cents for damages, if any.

a. net profits that Xiangxiang ("Andy") Tang should have received in the past but has not been paid

Answer in dollars and cents, if any :$ _____ 33,600 _____

b. net profits that Xiangxiang ("Andy") Tang would receive in the future.

Answer in dollars and cents, if any :$ _____ 121,600 _____

*UNANIMOUS BY VOTE*
*SAME AS QUESTION 2.*

8

142

## QUESTION 6

Was Klaus Wiegand part of a conspiracy that damaged Xiangxiang ("Andy") Tang?

To be part of a conspiracy, Klaus Wiegand and Yvonne Tran must have had knowledge of, agreed to, and intended a common objective or course of action that resulted in damages to Xiangxiang ("Andy") Tang. One or more persons involved in the conspiracy must have performed some act or acts to further the conspiracy.

Answer "Yes" or "No."

Answer: _YES_

VOTES

YES    11

No      1

9

143

Answer Question No. 7 if you answered "Yes" to Question No. 6.

## QUESTION 7

What sum of money, if paid now in cash, would fairly and reasonably compensate Xiangxiang ("Andy") Tang for her loss, if any, that results from Klaus Wiegand's conspiracy in Question 6?

Consider the following element of damages, if any, and none other.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any. Do not include in your answer any amount that you find Xiangxiang ("Andy") Tang could have avoided by the exercise of reasonable care.

You are instructed that any monetary recovery for the following is subject to income taxes.

Answer separately in dollars and cents for damages, if any.

a. net profits that Andy Tang should have received in the past but has not been paid

Answer in dollars and cents, if any :$_____-0-_____

b. net profits that Andy Tang would receive in the future.

Answer in dollars and cents, if any :$_____-0-_____

10

144

Answer the following question only if you unanimously answered "No" to Question 4. Otherwise, do not answer the following question.

To answer "Yes" to the following question, your answer must be unanimous. You may answer "No" to the following question only upon a vote of ten or more jurors. Otherwise, you must not answer the following question.

## QUESTION 8

Do you find by clear and convincing evidence that the harm to Xiangxiang ("Andy") Tang by Yvonne Tran that you have found resulted from malice?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malice" means a specific intent by Yvonne Tran to cause substantial injury or harm to Xiangxiang ("Andy") Tang.

Answer "Yes" or "No."


Answer: ___NO___     UNanimous

11

145

Answer the following question only if you unanimously answered "Yes" to Question 8. Otherwise, do not answer the following question.

You must unanimously agree on the amount of any award of exemplary damages.

## QUESTION 9

What sum of money, if any, if paid now in cash, should be assessed against Yvonne Tran and awarded to Xiangxiang ("Andy") Tang as exemplary damages, if any, for the conduct found in response to Question 4?

"Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any, are --

1.    The nature of the wrong.

2.    The character of the conduct involved.

3.    The degree of culpability of Yvonne Tran.

4.    The situation and sensibilities of the parties concerned.

5.    The extent to which such conduct offends a public sense of justice and propriety.

6.    The net worth of Yvonne Tran.

Answer in dollars and cents, if any, as to Xiangxiang ("Andy") Tang:

Answer: $_____

12

146

Answer the following question only if you unanimously answered "Yes" to Question 6. Otherwise, do not answer the following question.

To answer "Yes" to the following question, your answer must be unanimous. You may answer "No" to the following question only upon a vote of ten or more jurors. Otherwise, you must not answer the following question.

## QUESTION 10

Do you find by clear and convincing evidence that the harm to Xiangxiang ("Andy") Tang by Klaus Wiegand that you have found resulted from malice?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malice" means a specific intent by Klaus Wiegand to cause substantial injury or harm to Andy Tang.

Answer "Yes" or "No."


Answer: _____

13

147

Answer the following question only if you unanimously answered "Yes" to Question 10. Otherwise, do not answer the following question.

You must unanimously agree on the amount of any award of exemplary damages.

## QUESTION 11

What sum of money, if any, if paid now in cash, should be assessed against Klaus Wiegand and awarded to Xiangxiang ("Andy") Tang as exemplary damages, if any, for the conduct found in response to Question 6?

"Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any, are --

1.    The nature of the wrong.

2.    The character of the conduct involved.

3.    The degree of culpability of Klaus Wiegand.

4.    The situation and sensibilities of the parties concerned.

5.    The extent to which such conduct offends a public sense of justice and propriety.

6.    The net worth of Klaus Wiegand.

Answer in dollars and cents, if any:

Answer: $_____

14

## QUESTION 12

Did Xiangxiang ("Andy") Tang fail to comply with the Partnership Agreement?

Answer "Yes" or "No."

Answer: ~~Yes~~ NO

UNANIMOUS

15

Answer Question No. 13 if you answered "Yes" to Question No. 12.

## QUESTION 13

Was Xiangxiang ("Andy") Tang's failure to comply excused?

Failure to comply by Xiangxiang ("Andy") Tang is excused by Yvonne Tran's previous failure to comply with a material obligation of the same agreement.
Failure to comply may include prior repudiation of the agreement by Yvonne Tran.
A party repudiates an agreement when she indicates by her words or actions that she is not going to perform her obligations under the agreement in the future, showing a fixed intention to abandon, renounce, and refuse to perform the agreement.

Failure to comply by Xiangxiang ("Andy") Tang is excused if compliance is waived by Yvonne Tran.
Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

Failure to comply with one agreement is excused if the parties agreed that a new agreement would take its place.

Failure to comply with a term in an agreement is excused if the parties agreed that a new term would take its place.

Failure to comply with an agreement is excused if a different performance was accepted as full satisfaction of performance of the original obligations of the agreement.

Failure to comply by Xiangxiang ("Andy") Tang is excused if the failure was ratified by Yvonne Tran.

Failure to comply with a term of an agreement is excused if the parties agreed that a new term would take its place.

Answer "Yes" or "No"

Answer:_____

16

150

If you have answered "Yes" to Question 12 and "No" to Question 13, then answer the following question. Otherwise do not answer the following question.

## QUESTION 14

What sum of money, if paid now in cash, would fairly and reasonably compensate Yvonne Tran for her loss, if any, that results from Xiangxiang ("Andy") Tang's failure to comply with the Partnership Agreement ?

Consider the following element of damages, if any, and none other.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the Court when it applies the law to your answers at the time of judgment. Do not add any amount of interest on damages, if any. Do not include in your answer any amount that you find Yvonne Tran could have avoided by the exercise of reasonable care.

You are instructed that any monetary recovery for the following is subject to income taxes.

(a)     net profits that Yvonne Tran should have received in the past but have not been paid.

Answer in dollars and cents, if any.  $ _____

(b)     net profits that Yvonne Tran, in reasonable probability, would receive in the future.

Answer in dollars and cents, if any  $ _____

17

151

# QUESTION 15

Did Xiangxiang ("Andy") Tang comply with her fiduciary duty to Yvonne Tran?

Because a relationship of trust and confidence existed between them, Xiangxiang ("Andy") Tang owed Yvonne Tran a fiduciary duty. To prove Xiangxiang ("Andy") Tang failed to comply with her fiduciary duty, Yvonne Tran must show –

1.　　the transaction in question was not fair and equitable to Yvonne Tran; or

2.　　Xiangxiang ("Andy") Tang did not make reasonable use of the confidence that Yvonne Tran place in her; or

3.　　Xiangxiang ("Andy") Tang failed to act in the utmost good faith or exercise the most scrupulous honesty toward Yvonne Tran;

4.　　~~placed~~ *Xiangyiang ("Andy") Tang* placed her own interests before Yvonne Tran's, used the advantage of her position to gain a benefit for herself at the expense of Yvonne Tran, or placed herself in a position where her self-interest might conflict with her obligations as a fiduciary; or

5.　　Xiangxiang ("Andy") Tang failed to fully and fairly disclose all important information to Yvonne Tran concerning the transaction.

Answer "Yes" or "No."


Answer:_____ YES _____

UNANIMOUS

18

If you have answered "No" to Question 15, then answer the following question. Otherwise do not answer the following question.

## QUESTION 16

What sum of money, if paid now in cash, would fairly and reasonably compensate Yvonne Tran for her loss, if any, that were proximately caused by such conduct ?

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result there from. There may be more than one proximate cause of an event.

Consider the following element of damages, if any, and none other.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the Court when it applies the law to your answers at the time of judgment. Do not include in your answer any amount that you find Yvonne Tran could have avoided by the exercise of reasonable care. Do not add any amount of interest on damages, if any.

You are instructed that any monetary recovery for the following are subject to income taxes.

(a)     net profits that Yvonne Tran should have received in the past but have not been paid.

Answer in dollars and cents, if any.  $ _____

(b)     net profits that Yvonne Tran, in reasonable probability, would receive in the future.

Answer in dollars and cents, if any  $ _____

19

153

# QUESTION 17

Do you find that Xiangxiang ("Andy") Tang holds money that in equity and good conscience belongs to Yvonne Tran ?


Answer: **No**

**UNANIMOUS**

154

If you have answered "Yes" to Question 17, then answer the following question. Otherwise do not answer the following question.

## QUESTION 18

What sum of money, if paid now in cash, would fairly and reasonably compensate Yvonne Tran for her loss, if any, that were proximately caused by such conduct?

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the Court when it applies the law to your answers at the time of judgment. Do not include in your answer any amount that you find Yvonne Tran could have avoided by the exercise of reasonable care. Do not add any amount of interest on damages, if any.

You are instructed that any monetary recovery for the following is subject to income taxes.

Answer in dollars and cents, if any:_____

155

## QUESTION 19

Do you find that Xiangxiang ("Andy") Tang unlawfully appropriated money from Yvonne Tran with the intent to deprive her of it ?

Appropriation is unlawful if it is without the owner's effective consent.

You are instructed that any monetary recovery for the following is subject to income taxes.

Answer:___*NO*___

UNAUIMOLS

22

156

If you have answered "Yes" to Question 19, then answer the following question. Otherwise do not answer the following question.

## QUESTION 20

What sum of money, if paid now in cash, would fairly and reasonably compensate Yvonne Tran for her loss, if any, that were proximately caused by such conduct?

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the Court when it applies the law to your answers at the time of judgment. Do not include in your answer any amount that you find Yvonne Tran could have avoided by the exercise of reasonable care. Do not add any amount of interest on damages, if any.

You are instructed that any monetary recovery for the following is subject to income taxes.

Answer in dollars and cents, if any_____

157

Answer the following question only if you unanimously answered "No" to Question 15. Otherwise do not answer the following question.

To answer "Yes," to any part of the following question, your answer must be unanimous. You may answer "No" to any part of the following question only upon a vote of ten or more jurors. Otherwise, you must not answer that part of the following question.

## QUESTION 21

Do you find by clear and convincing evidence that the harm to Yvonne Tran that you have found resulted from malice ?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malice" means a specific intent by Xiangxiang ("Andy") Tang to cause substantial injury or harm to Yvonne Tran.

Answer "Yes" or "No."

Answer:_____

24

158

Answer the following question only if you unanimously answered "Yes" to Question 21. Otherwise do not answer the following question.

You must unanimously agree on the amount of any award of exemplary damages.

## QUESTION 22

What sum of money, if any, if paid now in cash, should be assessed against Xiangxiang ("Andy") Tang and awarded to Yvonne Tran as exemplary damages, if any, for the conduct found in response to Questions Two, Four or Eight ?

"Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

You are instructed that any monetary recovery for the following is subject to income taxes.

Factors to consider in awarding exemplary damages, if any, are—

1.    The nature of the wrong;

2.    The character of the conduct involved;

3.    The degree of culpability of Xiangxiang ("Andy") Tang;

4.    The situation and sensibilities of the parties concerned;

5.    The extent to which such conduct offends a public sense of justice and propriety.

6.    The net worth of Xiangxiang ("Andy") Tang.

Answer in dollars and cents, if any.


Answer:_____

25

159

# Verdict Certificate

Check one:

_____ Our verdict is unanimous. All 12 of us have agreed to each and every answer. The presiding juror has signed the certificate for all 12 of us.

_____          _____
Signature of Presiding Juror                         Printed name of Presiding Juror

_____ Our verdict is not unanimous. Eleven of us have agreed to each and every answer and have signed the certificate below.

✓ Our verdict is not unanimous. Ten of us have agreed to each and every answer and have signed the certificate below.

| | SIGNATURE | NAME PRINTED |
|---|---|---|
| 1. | Holly Shealy | Holly Shealy |
| 2. | Nkechi Anumnu | Nkechi Anumnu |
| 3. | Dorothy Harrison | Dorothy HARRISON |
| 4. | Linda Mealey | LINDA MEALEY |
| 5. | Lisa Delouey | LISA Delouey |
| 6. | Tracey Weathers | Tracey Weathers |
| 7. | Tunise Jackson | Tunise Jackson. |
| 8. | Damitra Milo | Damitra Milo |
| 9. | Ashley Berrospe | Ashley Berrospe |
| 10. | ~~Bayan Saab~~ | BAYAN SAAB |
| 11. | | |
| 12. | | |

FILED

SEP 1 9 2014
AT 7:13 P. M. RC
Annie Rebecca Elliott
Clerk District Court, Fort Bend Co.

160

26

# APPENDIX

# TAB 3

# *Moak v. Huff*

Court of Appeals of Texas, Fourth District, San Antonio

February 15, 2012, Delivered; February 15, 2012, Filed

No. 04-11-00184-CV

**Reporter**

2012 Tex. App. LEXIS 1245; 2012 WL 566140

Cynthia J. MOAK, Appellant v. Cynthia HUFF, Appellee

**Prior History:** [*1] From the 37th Judicial District Court, Bexar County, Texas. Trial Court No. 2008-CI-21062. Honorable Janet P. Littlejohn, Judge Presiding.

**Disposition:** AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

## Core Terms

funds, trial court, attorney's fees, properties, prevail, invest, real estate, cause of action, buy, proceeds, segregate, expenses, services, damages, argues, trial court's finding, prevailing party, defending, consumer, pet, knowingly, mortgage, insurance proceeds, selling property, circumstantial evidence, entitled to recover, investment plan, recoverable, expertise, profits

## Case Summary

### Procedural Posture

Defendant mother appealed a judgment of the 37th Judicial District Court, Bexar County, Texas, that awarded damages to plaintiff daughter under the Deceptive Trade Practices Act, arguing that the evidence was legally and factually insufficient to support the trial court's findings and that the trial court erred in failing to award her attorney fees for successfully defending against her daughter's claim under the Texas Theft Liability Act.

### Overview

The daughter's parents were divorced. After her father's death, the daughter received the proceeds from his life insurance policy, and she was approached by her mother, who offered to invest the money for her in certain real estate. Instead, the mother diverted the funds to her own use, and the daughter filed suit. On review, the court held that the mother knowingly violated the Deceptive Trade Practices Act, *Tex. Bus. & Com. Code Ann. § 17.45* (2011), by (1) representing her investment plan for her daughter had benefits that it did not have and (2) failing to disclose her intent to divert the funds to her own use, thus inducing her daughter into an investment plan she likely would not have entered into had the mother's plan been disclosed. However, the trial court erred in failing to award attorney fees to the mother for successfully defending against the daughter's claim under the Texas Theft Liability Act (TTLA) because an award of fees to a prevailing party in a TTLA action was mandatory. The TTLA required the trial court to award attorney fees to a prevailing defendant without any prerequisite that the claim was found to be groundless, frivolous, or brought in bad faith.

### Outcome

That part of the judgment that awarded the daughter damages under the Deceptive Trade Practices Act was affirmed, but that portion of the judgment that denied the mother's request for attorneys fees was reversed, and the case was remanded for further proceedings.

## LexisNexis® Headnotes

Civil Procedure > ... > Standards of Review > Substantial Evidence > Sufficiency of Evidence

*HN1* When a trial court has made findings of fact and a reporter's record has been filed, an appellate court reviews the findings for legal and factual sufficiency of the evidence using the same standards applied to jury findings. In addressing a legal sufficiency challenge, the appellate court views the evidence in the light that supports the trial court's findings and indulges every reasonable inference that would support the findings. The appellate court credits favorable evidence if a reasonable factfinder could and disregard contrary evidence unless reasonable factfinders could not. If the evidence would enable reasonable and fair-minded people to reach the verdict under review, it is legally sufficient. In reviewing factual sufficiency points, an appellate court looks at all the evidence in the record and will sustain the point only if the evidence

supporting the trial court's finding is so weak or so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. In conducting a review of both the legal and factual sufficiency of the evidence, the appellate court is mindful that the trial court was the sole judge of the credibility of the witnesses and the weight to be given their testimony. The appellate court may not substitute its judgment for the fact finder's, even if the evidence would clearly support a different result.

> Antitrust & Trade Law > ... > Trade Practices & Unfair Competition > State Regulation > Claims

**HN2** A consumer may recover the economic damages caused by his detrimental reliance on one of the false, misleading, or deceptive acts enumerated in *§ 17.46(b)* of the Deceptive Trade Practices Act (DTPA). *Tex. Bus. & Com. Code Ann §§ 17.46(b)* and *17.50(a)(1)* (2011). If the trier of fact finds the conduct was committed knowingly, it may award additional damages. *Tex. Bus. & Com. Code Ann. §17.50(b)(1)*. (24).

> Antitrust & Trade Law > ... > Trade Practices & Unfair Competition > State Regulation > Claims

**HN3** A consumer under the Deceptive Trade Practices Act (DTPA) is one who sought or acquired by purchase or lease. *Tex. Bus. & Com. Code Ann. § 17.45(4)* (2011). To be a consumer, plaintiff must have sought or acquired goods or services by purchase or lease, and those goods and services must be the basis of the complaint. A gratuitous act is not a purchased good or service under the DPTA.

> Antitrust & Trade Law > ... > Trade Practices & Unfair Competition > State Regulation > Claims

**HN4** "Knowingly" under the Deceptive Trade Practices Act (DTPA) means actual awareness of, at the time of the act or practice complained of, of the falsity, deception, or unfairness of the act or practice giving rise to plaintiff's claim. *Tex. Bus. & Com. Code Ann. § 17.45(9)* (2011).

> Antitrust & Trade Law > ... > Trade Practices & Unfair Competition > State Regulation > Claims

> Civil Procedure > Appeals > Standards of Review > Questions of Fact & Law

**HN5** Intent under the Deceptive Trade Practices Act (DTPA) is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony. While a party's intent is determined at the time the party made the representation, it may be inferred from the party's subsequent acts after the representation is made.

> Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > Statutory Awards

> Civil Procedure > ... > Costs & Attorney Fees > Costs > General Overview

**HN6** See *Tex. Civ. Prac. & Rem. Code Ann. art. 134.005(b)* (2011).

> Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > Statutory Awards

> Civil Procedure > Appeals > Standards of Review > De Novo Review

> Civil Procedure > Appeals > Standards of Review > Questions of Fact & Law

**HN7** The availability of attorney fees under a particular statute is a question of law for the court. An appellate court therefore reviews the issue de novo.

> Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > Statutory Awards

**HN8** The award of fees to a prevailing party in a Texas Theft Liability Act (TTLA) action is mandatory. The TTLA requires the court to award attorney fees to a prevailing defendant without any prerequisite that the claim is found to be groundless, frivolous, or brought in bad faith. The TTLA claim must actually be litigated for either party to be entitled to fees. A plaintiff who obtains both a liability finding and relief, i.e., damages, on the TTLA claim is entitled to an award of fees. A defendant who successfully defends a TTLA suit is entitled to recover his fees.

> Governments > Legislation > Interpretation

**HN9** When a court construes a statute, it reads the words and phrases used in context and construes them according to the rules of grammar and common usage. *Tex. Gov't Code Ann. § 311.011(a)* (2005).

> Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > Statutory Awards

**HN10** A party who prevails on a cause of action for which fees are recoverable must prove the fees that were necessary for the litigation of that claim. A prevailing party must segregate recoverable from unrecoverable attorney fees in all cases. Attorney fees are recoverable only if necessary to recover on a contract or statutory claim allowing them. The exception for fees incurred solely on separate but arguably intertwined claim has been eliminated, and the limited exception to the duty to segregate applies only when discrete legal services advance both a recoverable and unrecoverable claim. The party seeking fees bears the burden of demonstrating the exception applies.

**Counsel:** For APPELLANT: Jason McKinnie, Michael D. Paul, Gunn, Lee & Cave, P.C., San Antonio, TX.

For APPELLEE: Samuel V. Houston, III, Ford & Massey, P.C., San Antonio, TX; Brandon Barchus, Houston, TX; Dinah L. Gaines, Staff Attorney, Bexar County Civil District Courts, San Antonio, TX.

**Judges:** Opinion by: Steven C. Hilbig, Justice. Sitting: Karen Angelini, Justice, Sandee Bryan Marion, Justice, Steven C. Hilbig, Justice.

**Opinion by:** Steven C. Hilbig

# Opinion

**MEMORANDUM OPINION**

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART

The trial court rendered judgment awarding Cynthia Huff damages against her mother, Cynthia Moak, for violations of the Deceptive Trade Practices Act. Moak appeals the judgment, arguing the evidence is legally and factually insufficient to support the trial court's findings and the trial court erred by failing to award her attorney's fees for successfully defending Huff's claim under the Texas Theft Liability Act. We affirm the part of the judgment that awards Huff damages under the DTPA. However, because we hold Moak was entitled to an award of attorney's fees, we reverse in part and remand the cause to the trial court for further proceedings.

**Background**

When Moak was married to Huff's father, Moak wrote a life insurance policy for him, naming herself as beneficiary. The couple later divorced, **[\*2]** and during one of several child custody proceedings, the family court ordered that the beneficiary of the policy be changed from Moak to Huff. When Huff's father died in October 2006, Moak helped Huff obtain the $150,000 life insurance proceeds. In December 2006, Huff delivered $70,000 of the proceeds to Moak pursuant to an agreement between them that Moak would invest the money in real estate for Huff's benefit. According to Huff, Moak was to use her experience and expertise to invest the funds in real property that could be sold quickly for a profit, and in exchange, Moak would receive a share of the profit.

Two years after transferring the funds to her mother, Huff had not received any return on her investment or title to any property. When Moak refused Huff's demand to return the funds, Huff sued Moak, alleging multiple causes of action.

After a bench trial, the trial court ruled in Huff's favor on her DTPA, breach of contract, fraud, and conversion claims, and found that Moak committed the DTPA violations knowingly. The court found Huff suffered economic damages of $70,000, but that neither mental anguish damages nor entitlement to punitive damages was proven. The court ruled against **[\*3]** Huff on her claim under the Texas Theft Liability Act (TTLA), ruling Huff did not prove criminal intent, and the court declined to impose a constructive trust on two properties Moak had purchased in her own name. Finally, the court denied Moak's claim for attorney's fees under the TTLA. Huff elected to recover on the DTPA cause of action, and the trial court signed a judgment awarding Huff $70,000 in economic damages, prejudgment interest, $140,000 for knowing violations of the DTPA, post-judgment interest, and costs. At Moak's request, the trial court made findings of fact and conclusions of law.

On appeal, Moak challenges the legal and factual sufficiency of the evidence supporting the trial court's findings on various elements of each of the causes of action on which Huff prevailed. Additionally, Moak contends she conclusively established her attorney's fees and was entitled to recover them because she was the prevailing party in Huff's TTLA cause of action.

**Sufficiency of the Evidence**

*Standard of Review*

*HN1* When the trial court has made findings of fact and a reporter's record has been filed, we review the findings for legal and factual sufficiency of the evidence using the same standards **[\*4]** we apply to jury findings. *Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994)*; *Darocy v. Abildtrup, 345 S.W.3d 129, 136 (Tex. App.—Dallas 2011, no pet.)*. In addressing a legal sufficiency challenge, we view the evidence in the light that supports the trial court's findings and indulge every reasonable inference that would support the findings. *City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005)*. We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless reasonable factfinders could not. *Id*. If the evidence "would enable reasonable and fair-minded people to reach the verdict under review" it is legally sufficient. *Id*. In reviewing factual sufficiency points, we look at all the evidence in the record, and will sustain the point only if the evidence supporting the trial court's finding is so weak or so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986)*; *Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965)*. In conducting our review of both the legal and factual sufficiency of the evidence, we are mindful that the trial court was the sole judge of the credibility **[\*5]** of the witnesses and the weight to be given their testimony. *City of Keller, 168*

*S.W.3d at 819*. We may not substitute our judgment for the fact finder's, even if the evidence would clearly support a different result. *Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex.)*, cert. denied, 525 U.S. 1017, 119 S. Ct. 541, 142 L. Ed. 2d 450 (1998).

### DTPA Claims and Findings

**HN2** A consumer may recover the economic damages caused by his detrimental reliance on one of the false, misleading, or deceptive acts enumerated in *section 17.46(b)* of the DTPA. *Tex. Bus. & Com. Code Ann §§17.46(b)*, *17.50(a)(1)* (West 2011). If the trier of fact finds the conduct was committed knowingly, it may award additional damages. *Id*. *§17.50(b)(1)*. Here, the trial court found Huff and Moak entered into an agreement whereby Huff gave Moak $70,000 to invest in real estate, with the intent the property would be sold quickly for a profit. The court found the parties agreed to split the profits. The court found Moak violated the DTPA by: (1) "represent[ing] her investment plan . . . had benefits or uses it did not have" and (2) "fail[ing] to disclose her intention of diverting one half of the life insurance proceeds to her own use[,] inducing Plaintiff into **[*6]** an investment plan that she probably would not have entered into if Defendant's plan had been disclosed." *See id*. *§17.46(b)(15)*, *(24)*. The court also found Moak's deceptive acts were committed knowingly and they caused Huff to suffer $70,000 in economic damages. The court found the parties had a long "history" and that their testimony about past events was contradictory. The trial court included a statement that its findings were based on its evaluation of the witnesses' credibility.

Moak challenges the sufficiency of the evidence to support the findings that Huff was a consumer of Moak's services, that Moak made any misrepresentations about the investment plan or failed to disclose her true intentions about her use of the funds, and that any conduct violating the DTPA was committed knowingly.

### The Evidence

The only witnesses at trial were Huff, Moak, and Moak's attorney, who testified only about attorney's fees. Both Huff and Moak testified their relationship had been strained for a long time. According to Huff, her mother approached her after her father died and offered to help her obtain the life insurance proceeds. Huff believed her mother was making an effort to rebuild their relationship, **[*7]** and accepted the offer. Huff received $150,000 insurance proceeds in the beginning of December 2006. Huff testified that her mother urged her to invest as much of the proceeds as possible and offered to invest the funds for her. Huff testified she had wanted to use the money to buy a house for her and her young son to live in, but Moak talked her out of it. Huff had no experience with or

knowledge about investing, but knew her mother had run an investment consulting business. She testified she had several discussions with Moak about investing the funds, during which Moak told Huff she had broad expertise in different fields of investing, including real estate. Huff testified Moak explained the concept of "flipping" real estate to her, and told her that in order to make a profit, one must buy and sell quickly in order to keep expenses low. She testified Moak also explained to her that investment agents customarily take a percentage of the profit.

Huff decided to give her mother about half of the insurance proceeds to invest for her. Huff testified Moak told her she would most likely invest the money in real estate, led her to believe she would "flip" the property, and told Huff that "we" **[*8]** should get a good return. Based on what Moak explained to her about "flipping" real estate, Huff understood this to mean the intent was to sell the property quickly. Huff testified it was also her understanding from her discussions with her mother that, as the investment agent, Moak would get a percentage of the profits. However, they never discussed exactly how much Moak would make.

Moak's account of the discussions was different. Moak testified that her daughter only talks to her when she needs help with something, and that it was Huff who approached her for help getting the insurance proceeds. Moak testified that Huff also came to her asking for help investing the proceeds. According to Moak, Huff was concerned she was spending the proceeds too quickly. Moak testified that Huff came to her and asked her to invest the money. According to Moak, Huff suggested it be invested in real estate, and that was the only type of investment they ever discussed. Moak denied Huff ever said she wanted to use the proceeds to buy a house for her and her son.

Moak testified she is a business consultant and operated a sole proprietorship called "Financial Resources and Investments" since Huff was a child. **[*9]** Moak denied telling Huff she had any experience investing in real estate. Moak is not a licensed real estate agent or mortgage broker and never has been. The only license she has ever held is an insurance agent license. In December 2006, Moak's only experience buying or selling real estate was in hiring a realtor to buy a personal home. Moak was not familiar with the San Antonio real estate market at that time. Moak testified she attended her first sheriff's sale at the beginning of December 2006, about the same time Huff received the insurance proceeds. She did this because she was curious about the procedure and was interested in buying tax sale property for herself.

Moak testified that during her discussions with Huff, Moak believed the San Antonio real estate market was very healthy and that if Moak could buy property at a good price, "it would be a good situation" for Huff. Moak testified she agreed to

research and buy property with Huff's money, maintain and sell the property for Huff's benefit, and disburse any profits to Huff when the property sold. Moak testified they did not discuss any time frame for selling the property. Moak also testified she was not going to receive any **[\*10]** compensation for her efforts.

On December 18, 2006, Huff gave Moak $70,000. Moak transferred the funds to an account in her business name — "Cynthia Moak, Sole Proprietor, Financial Resources and Investments." Moak testified the account was to be used solely for Huff's investment. However, Moak conceded the funds in that account were comingled with Moak's personal funds, and she testified she did not take any steps to distinguish her funds from Huff's.

After receiving the money from Huff, Moak consulted with a realtor who advised her about the San Antonio market. Moak testified she decided the only way to buy at a reasonable price was at a sheriff's sale. Moak purchased two properties at a sheriff's sale on February 7, 2007. One of the properties was 2.004 acres of unimproved land on Seguin Road, which was purchased for $24,800. Moak testified the comparables for this property were between $150,000 and $399,000. She also bought a house on Schmeltzer Street for $60,400. Moak believed that property was worth over $100,000. Moak testified she used her own funds to pay for the difference in the price of the properties, but considered the properties to be Huff's. The deeds were put in Moak's **[\*11]** name, individually. Moak stated this was because she owned the properties, would be managing them, and was going to rehabilitate them. She testified she believed she had to own the properties in order to turn on the utilities and authorize work to be done.

Moak testified she did not consult with Huff about purchasing properties at a tax sale, about what properties to buy, or about how much to spend to purchase the properties or to prepare them for sale. Nor did Moak tell Huff she was putting the properties in her own name or the reason for doing so. Moak testified she notified Huff about the purchases when they occurred. However, she conceded she stopped communicating with Huff about a month later because they entered into a "rather unpleasant" custody dispute over Huff's son.

Huff denied that Moak told her about the tax sale purchases. She testified she tried to contact her mother on numerous occasions, was unable to get any information from Moak about her investment. According to Huff, she first learned about the properties in July 2007, when the judge in the custody proceeding over Huff's son ordered Moak to provide Huff information about her investment. Moak then gave Huff copies **[\*12]** of the deeds from the February 2007 tax sale and a "Statement of Account." The statement recited that 40% of Huff's investment ($28,000) was in the Schmeltzer property, and that 60% of Huff's investment ($42,000) was in the Seguin

Road property. However, the Seguin Road property only cost $24,800, and the statement recites that "[p]reparation of property for sale not yet begun." And Moak admitted the total cost associated with that property was less than $42,000.

Huff testified that after she learned about the properties in July 2007, she told Moak she wanted the properties sold quickly so she could get her money back. Moak's response was "you're not the only investor involved in this. It's not all about you." Huff testified that in the only other conversation she had with her mother about the investment, Moak told her she would return Huff's money if Huff would "sign over the rights" to her son. Moak did nothing further to inform Huff about anything done to prepare, list, advertise, rent, or sell the properties.

### The Schmeltzer Street property

Moak testified she did an on-site visit to the Schmeltzer property before bidding on it, but did not notice there were squatters living in the **[\*13]** house. After buying the property, she pursued a forcible entry and detainer action to remove them. Moak testified she spent money to remodel the house, but it was burglarized and vandalized several times and the work had to be redone. Much of the labor was done by her father-in-law's construction company, which received thousands of dollars for the work. Moak testified the cost of the work was lower than if she had used another contractor.

Moak testified she first listed the Schmeltzer property for sale in the fall of 2007. She did not hire a real estate agent and testified she was advertising and showing the house herself in order to keep expenses down. She rented the house to tenants for several months and testified she used the proceeds towards maintenance of the property.

In February 2008, Moak mortgaged the Schmeltzer property. Although the property appraised for $124,000 at the time, the mortgage company would only give her a loan for $86,500, 70% of the value. Moak signed a deed of trust and a thirty-year note at seven and one-half percent interest. Moak testified she used the net proceeds of $76,000 for her daily living expenses.

In April 2009 Moak decided to aggressively advertise **[\*14]** and market the property, and she hired a real estate agent. The house was listed at $129,500 at that time, but at the time of trial in December 2010, the asking price had been reduced to $124,000.

Moak testified she never consulted with or advised Huff about any of the work done on the Schmeltzer property, her decision to mortgage the Schmeltzer property, or how to use the mortgage proceeds. It "never occurred" to her to do so. Likewise, it "never occurred" to Moak to consult with Huff about her decision to rent the Schmeltzer house for several

months or to keep the proceeds from the rentals. Huff did not learn the property had been rented until this litigation.

### The Seguin Road property

Moak offered no evidence she had ever listed the 2.004 acre Seguin Road property for sale. Huff testified that at one point, after she learned the properties had been bought, Moak told her she had received an offer for it, but turned it down because it was too low. The property was purchased for $24,800, and Moak's records show no expenses other than property taxes were incurred on the property through 2009. Moak testified that when she bought the property, she had comparables valued at between $150,000 [*15] to $399,000. There is no evidence the property needed any work and Moak offered no explanation of why she did not seek a quick sale of the property in 2007 or early 2008. Moak testified that in late summer 2008, the property lost much of its value because new FEMA floodplain maps put part of the land in the one-hundred-year flood plain. The Bexar County Appraisal District appraised the property at $99,500 in 2007, but the appraisal had dropped to $58,490 by 2009.

Moak stated she did not have a planned time frame for selling the Seguin Road property and never set up a budget for marketing of the property. She denied ever telling Huff she had turned down an offer on the property. Moak testified the only offer she received was a walk-in offer for $70,000 in October 2008. The prospective buyers submitted a signed earnest money contract, but according to Moak, the offer was withdrawn because the buyers could not obtain financing.

Moak testified that although she commingled Huff's funds with her own, she kept records of the expenses associated with each property. She testified that as of the time of trial, she had spent more than $86,800 of her own funds to purchase, rehabilitate, and maintain [*16] the properties. The expenditures are reflected in her "Quick Book" entries that were admitted into evidence. Moak testified both properties were for sale at the time of trial, but the economic downturn, the increased difficulty in qualifying for a mortgage, and the flood plain designation made sale difficult. Moak stated that when the properties sell, she plans to subtract her expenses from the proceeds and give Huff the balance.

### Consumer Status

Moak argues Huff was not a consumer under the DTPA because Moak's investment services were being provided gratuitously. *HN3* A consumer under the DTPA is one who

"sought or acquired by purchase or lease." *Tex. Bus. & Com. Code Ann. § 17.45(4)* (West 2011). To be a "consumer," the plaintiff must have sought or acquired goods or services by purchase or lease, and those goods and services must be the basis of the complaint. *Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 539 (Tex. 1981)*. "A gratuitous act is not a purchased good or service under the Act." *Moritz v. Bueche, 980 S.W.2d 849, 855 (Tex. App.—San Antonio 1998, no pet.)*.

Moak contends she provided her investment service gratuitously, and the evidence was insufficient to support the trial [*17] court's finding that the parties agreed Moak would receive part of the profits from the investment as payment for her services. We disagree. Huff testified that before she entered into the investment agreement with her mother, Moak explained to her that the investment agent, Moak in this case, generally takes a share of the profits on the investment. Moak told Huff "we" should make a good return, and Huff understood her mother would share the profits from the investment. Huff agreed to this arrangement. Although Moak testified she was not going to receive any compensation for her services, the trial court was free to disbelieve her and to believe Huff instead. Further, although the property had not been sold for a profit at the time of trial, Moak received monetary benefits from her investment services. For example, Moak received $76,000 from the equity in the Schmeltzer property, which she used for personal expenses. Further, it was apparent from the court-ordered accounting Moak prepared in July 2007 that $17,200 of Huff's funds had not been attributed to either of the properties. These funds were commingled with Moak's personal funds in an account Moak used for her personal expenses. [*18] We hold the evidence is both legally and factually sufficient to establish that Huff sought or acquired Moak's services by purchase or lease and was therefore a consumer under the DTPA. *See E.F. Hutton & Co., Inc. v. Youngblood, 708 S.W.2d 865, 868-69 (Tex. App.— Corpus Christi 1986)*, aff'd, *741 S.W.2d 363 (Tex. 1987)* (holding plaintiff was a consumer of investment services for which commission was to be paid even though no commission was ultimately paid or charged).

### Knowing DTPA violations

The trial court found Moak knowingly[1] violated the DTPA by (1) representing her investment plan for Huff had benefits or uses that it did not have and (2) failing to disclose her intent to divert the funds to her own use, thus inducing Huff into an investment plan she probably would not have entered into had Moak's plan been disclosed. The trial court's findings do not specify what Moak's misrepresentations were, and Moak did

---

[1] *HN4* "Knowingly" under the DTPA means "actual awareness of, at the time of the act or practice complained of, of the falsity, deception,

or unfairness of the [*19] act or practice giving rise to the plaintiff's claim." *Tex. Bus. & Com. Code Ann. § 17.45(9)* (West 2011).

not request additional findings. Moak argues the evidence is legally and factually insufficient to support these findings.

Moak argues the evidence of any statements she made to Huff about the investment plan is insufficiently specific to constitute actionable misrepresentations or was mere "puffing" or opinion. However, Moak does not address Huff's contention that part of the inducement for her to give the money to Moak were Moak's representations that she had broad investment expertise, including in real estate. Moak fostered the impression that she had experience in real estate investment by explaining to Huff how real estate could be "flipped" for a profit. Huff was led to believe Moak would use her "broad expertise" to make profitable investment decisions. Moak, in fact, had no knowledge of the real estate market in San Antonio, had never been a real estate agent or mortgage broker, and had never purchased or sold any property other than her personal residence. She consulted with a realtor about the San Antonio market *after* receiving Huff's money and a year later she took a two-day real estate course. Given that Moak conceded at trial that she had no experience investing in real estate, the trial **[*20]** court could reasonably find that Moak knowingly misrepresented her qualifications and expertise.

Huff also argued Moak misrepresented that she intended to quickly sell the property she bought and failed to disclose that she instead intended to divert the funds for her own benefit. Moak contends the only direct evidence of her intent at the time of the transfer of funds was her own testimony that it was her intent to buy real estate, prepare it for sale, and sell it for a profit, all of which she would give to Huff. She argues her testimony was clear, direct, positive, and free from contradiction or suspicious circumstances, and that the trial court was therefore not free to disregard it. *See Schwartz v. Pinnacle Communications, 944 S.W.2d 427, 435 (Tex. App.— Houston [14th Dist.] 1997, no writ)*. Moak argues that the circumstantial evidence of her intent at the time of the agreement is "consistent with either of two facts and nothing shows that one is more probable than the other," and therefore "neither fact can be inferred." *See Lozano v. Lozano, 52 S.W.3d 141, 148 (Tex. 2001)* (holding jury may not reasonably infer ultimate fact from meager circumstantial evidence; where circumstantial **[*21]** evidence is slight, something else must be found in record to corroborate probability of fact's existence). She also argues that the trial court could not rely on Moak's conduct after the purchase as evidence of her intent at the time Huff gave her the money. We disagree.

**HN5** "Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony." *Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 434 (Tex. 1986)*. "While a party's intent is determined at the time the

party made the representation, it may be inferred from the party's subsequent acts after the representation is made." *Id*. Although Moak testified to her pure intent, there was ample circumstantial evidence that she intended to use the funds for her own benefit and did not intend to sell the property quickly for a profit.

The evidence regarding the Seguin Road property supports a finding that Moak did not intend to resell the property quickly. By Moak's own testimony, the Seguin Road property was bought at 25% or less of its February 2007 value. There was no evidence the property needed any work to prepare it for resale **[*22]** in February 2007, and the only expense Moak attributed to the property was for taxes. Yet Moak did not prepare a marketing plan or timeline for the property, did not list it for sale, and took no other action to try to sell it.

The circumstantial evidence also supports the trial court's finding that Moak intended to use Huff's funds for her own benefit. Initially, Moak talked Huff out of buying a house to live in with her son, and instead encouraged Huff to invest the funds in real estate through Moak. From the time Moak received the funds, she treated them as if they were her own. Moak put the money in an account where it was commingled with Moak's personal funds; an account from which Moak paid personal expenses. After buying the property at the tax sale, Moak had the deeds put in her name, individually, where they remained at the time of trial. The only tangible evidence that Moak acknowledged Huff had any interest in the property was the July 2007 court-ordered report, which lists Huff's investment in the Seguin Road property at an amount higher than the total cost and expenses associated with the property. Moak did not consult with Huff about any decisions regarding the properties, **[*23]** did not advise Huff that insurance claims were made and paid on the Schmeltzer property, and did not advise Huff the property was being rented or share any of the proceeds with Huff. Most significantly, Moak mortgaged the Schmeltzer property for $86,000, and used the proceeds to pay her living expenses. That it "never occurred" to Moak to consult with Huff about her decision to mortgage the property is entirely consistent with and supports a finding that Moak intended to use the funds for her own benefit from the beginning.

The circumstantial evidence supporting the trial court's findings is considerably more than "meager." *See Lozano, 52 S.W.3d at 148*. A reasonable factfinder could have found the weight of the circumstances made it more probable that Moak's intent was to divert Huff's funds for her own benefit and that she did not intend to sell the property quickly. *See id. at 148-50*. The trial court, as the sole judge of the witnesses' credibility, was free to disbelieve Moak's testimony about her intent. In light of the record as a whole, we hold the evidence

supporting the trial court's findings is not contrary to the overwhelming weight of the evidence or so weak as to be clearly [*24] wrong and unjust. *See Cain, 709 S.W.2d at 176*.

We hold the evidence is both legally and factually sufficient to support the trial court's findings that Moak knowingly misrepresented her qualifications and expertise and her intent to sell the property quickly for a profit and knowingly failed to disclose her intent to divert the funds for her own use and benefit. We affirm the judgment for Huff on her DTPA claim. We therefore do not address Moak's issues challenging the findings in support of the breach of contract, conversion, and fraud claims.

**Attorney's Fees**

Moak next argues the trial court erred by failing to award her attorney's fees because she was the prevailing party on Huff's TTLA claim and she conclusively established the amount of her fees. Chapter 134 of the Civil Practice and Remedies Code is the Texas Theft Liability Act. *Section 134.005(b)* of that chapter states:

> HN6 Each person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorney's fees.

*Tex. Civ. Prac. & Rem. Code Ann. art. 134.005(b)* (West 2011).

Moak presented evidence at trial that the reasonable and necessary fees and costs she had incurred through trial were $43,600 [*25] and the fees that would be incurred in an appeal to this court were $7,000. She also presented evidence that it would cost $5,000 to respond to a petition for review in the Supreme Court and $12,000 if the petition were granted. Huff did not controvert this evidence. Additionally, Moak's fee witness testified in one conclusory statement that the fees incurred defending the TTLA claim could not be segregated because the "causes of actions are . . . inextricably intertwined with each other." The trial court ruled for Moak on Huff's TTLA claim, concluding Moak "did not exhibit the requisite criminal intent for [Huff] to recover under the Theft Liability Act." However, the court also concluded that Moak "is not entitled to recover attorney fees pursuant to the Theft Liability Act as a prevailing party." The trial court did not make any findings of fact about the amount of reasonable and necessary fees Moak incurred defending the claim.

*Entitlement to Fees*

HN7 The availability of attorney's fees under a particular statute is a question of law for the court. *Holland v. Wal-Mart Stores, Inc., 1 S.W.3d 91, 94 (Tex. 1999)*. We therefore review the issue *de novo*. *El Paso Nat. Gas Co. v. Minco Oil & Gas, Inc., 8 S.W.3d 309, 312 (Tex. 1999)*; [*26] *Travel Music of San Antonio, Inc. v. Douglas, No. 04-07-00757-CV, 2002 Tex. App. LEXIS 3828, 2002 WL 1058527, at *3 (Tex. App.—San Antonio May 29, 2002, pet. denied)* (not designated for publication).

HN8 The award of fees to a prevailing party in a TTLA action is mandatory. *Peoples v. Genco Fed. Credit Union, No. 10-09-00032-CV, 2010 Tex. App. LEXIS 3386, 2010 WL 1797266, at *7 (Tex. App.—Waco May 5, 2010, no pet.)*(mem. op.) (affirming summary judgment for defendant in a TTLA suit and remanding for fee award). The TTLA requires the court to award attorney's fees to a prevailing defendant "without any prerequisite that the claim is found to be groundless, frivolous, or brought in bad faith." *Air Routing Int'l Corp. (Canada) v. Britannia Airways, Ltd., 150 S.W.3d 682, 686 (Tex. App.—Houston [14th Dist.] 2004, no pet.)*; *see Bocquet v. Herring, 972 S.W.2d 19, 20 (Tex. 1998)* ("Statutes providing that a party 'may recover,' 'shall be awarded,' or 'is entitled to' attorney fees are not discretionary."). The TTLA claim must actually be litigated for either party to be entitled to fees. *See Travel Music, 2002 Tex. App. LEXIS 3828, 2002 WL 1058527, at *3* (holding that where TTLA claim was nonsuited before trial, no party successfully prosecuted or defended merits of TTLA claim; [*27] therefore neither party "prevailed" on claim so as to be entitled to fee award, even though related claims were tried). A plaintiff who obtains both a liability finding and relief, i.e., damages, on the TTLA claim is entitled to an award of fees. *Glattly v. Air Starter Components, Inc., 332 S.W.3d 620, 641-42 (Tex. App.—Houston [1st Dist.] 2010, pet. denied)*. A defendant who successfully defends a TTLA suit is entitled to recover his fees. *See Peoples, 2010 Tex. App. LEXIS 3386, 2010 WL 1797266, at *7*; *Air Routing, 150 S.W.3d at 684*.

Huff argues this case is distinguishable from *Air Routing* and *Peoples* because in each of those cases the defendant obtained a take-nothing judgment against the plaintiff in the suit as a whole and, was clearly the prevailing party in the suit. She argues that a person does not "prevail in a suit" unless he is the "party in whose favor a judgment is rendered" and is "vindicated by the judgment." *See Flagship Hotel, Ltd. v. City of Galveston, 117 S.W.3d 552, 564-5 (Tex. App.— Texarkana 2003, pet. denied)* (where each party prevailed on various breach of contract claims in suit, "prevailing party" for purpose of fee award was party who prevailed on main issue, was awarded damages, and [*28] "was vindicated by the trial court's judgment"); *City of Amarillo v. Glick, 991 S.W.2d 14, 17 (Tex. App.—Amarillo 1997, pet. dism'd)* (police officers who appealed Civil Service Commission decision were entitled to fee award under *143.015(c) Texas Local Government Code* as prevailing parties because officers were "vindicated by the judgment," which set aside Commission's decision, even though officers did not receive all relief sought).

None of the cases cited by either Moak or Huff involve a party who clearly prevailed on claim for which fees are statutorily authorized, but who was unsuccessful on other claims and had a monetary judgment rendered against him. And none of the cases cited by either party sheds light on the precise issue before us: whether the phrase "person who prevails in a suit under this chapter" requires the party seeking fees simply to prevail on the TTLA claim or to prevail in the suit as a whole. *See McKinley v. Drozd, 685 S.W.2d 7, 8-9 (Tex. 1985)* (noting that language of DTPA that "[e]ach consumer who prevails shall be awarded . . ." did not answer question whether consumer must prevail only on DTPA claim or must obtain net recovery in entire lawsuit, and holding **[*29]** that, in light of purpose of statute, "prevail" referred to claim under DTPA and net recovery in suit not required for fee award).

**HN9** When we construe a statute, we read the words and phrases used in context, and we construe them according to the rules of grammar and common usage. *Tex. Gov't Code Ann. § 311.011(a)* (West 2005). Huff focuses on the word "suit," and argues the statute means that to be entitled to a recovery of fees under the TTLA, a party must prevail on the TTLA cause of action in a suit *and* prevail in the suit as a whole. However, this interpretation adds a requirement to the recovery of fees that the legislature did not include in the statute. We believe the more common sense meaning of the phrase "suit under this chapter" is a cause of action under chapter 134 of the Texas Civil Practice and Remedies Code — the TTLA. We hold that a person who prevails in a TTLA cause of action is entitled to recover the reasonable fees necessarily incurred prosecuting or defending that cause of action, even if the party is unsuccessful on other claims and counterclaims litigated in the same suit. We therefore conclude the trial court erred in ruling that Moak was not entitled to recover **[*30]** attorneys' fees under the TTLA as a prevailing party.

### Amount of Fees

Moak challenges the legal and factual sufficiency of the trial court's failure to find any fees. To prevail on her legal sufficiency point, Moak must show there was no evidence to support the trial court's failure to award any fees and that the evidence establishes the amount of her reasonable and necessary fees as a matter of law. *See Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001)*. Moak contends she conclusively established reasonable and necessary attorney's fees in the amount of $43,600. She argues she also presented uncontroverted evidence that the causes of action were so inextricably intertwined that fees could not be segregated, and that the trial court was therefore not free to disregard it.

**HN10** A party who prevails on a cause of action for which fees are recoverable must prove the fees that were necessary for the litigation of that claim. "[A] prevailing party must segregate

recoverable from unrecoverable attorney's fees in all cases." *Varner v. Cardenas, 218 S.W.3d 68, 69 (Tex. 2007)* (citing *Tony Gullo Motors I, L.P v. Chapa, 212 S.W.3d 299, 313 (Tex. 2006))*. In *Tony Gullo,* the Texas Supreme Court "reestablished **[*31]** the rule that attorney's fees are recoverable only if necessary to recover on a contract or statutory claim allowing them, and eliminated the exception for fees incurred solely on separate but arguably intertwined claims." *Varner, 218 S.W.3d at 69* (citing *Tony Gullo, 212 S.W.3d at 313*). The limited exception to the duty to segregate applies only "when discrete legal services advance both a recoverable and unrecoverable claim." *Tony Gullo, 212 S.W.3d at 313-14*. The party seeking fees bears the burden of demonstrating the exception applies. *Id. at 314*; *Thomas v. Goodman, No. 04-07-00531-CV, 2008 Tex. App. LEXIS 4933, 2008 WL 2602120, at *4 (Tex. App.—San Antonio July 2, 2008, pet. denied)* (mem. op.). "If any of the component tasks relate solely to a cause of action for which legal fees are not recoverable, the claimant must segregate the fees." *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc., 245 S.W.3d 488, 509 (Tex. App.—Houston [14th Dist.] 2007, pet. denied)*.

Moak's attorney testified about the time spent defending Huff's claims and that the amount of fees claimed were reasonable and necessary to the defense. When asked whether he could segregate the fees incurred defending the TTLA claim from those **[*32]** relating to the other causes of action, the witness testified:

> They can't be segregated. The causes of actions are, I believe the case law says, inextricably intertwined with each other. So you're not able to separate them out.

However, Moak also introduced into evidence her attorney's billing records, which include entries for legal work unrelated to defense of the TTLA claim. For example, one entry reflects three hours spent drafting a DTPA counterclaim. Another reflects over three hours to research a "trust issue." These fees were clearly not necessarily incurred in the defense of the TTLA claim. Because the discrete legal services performed by Moak's attorneys did not all advance both the defense of the TTLA claim and the defense of the other causes of action, Moak was required to segregate her attorney's fees. *See Tony Gullo, 212 S.W.3d at 314* ("when "it cannot be denied that at least some of the attorney's fees are attributable only to claims for which fees are not recoverable," segregation is required); *See also Ragsdale v. Progressive Voters League, 801 S.W.2d 880, 881-82 (Tex. 1990)*(the trial court is not required to credit uncontroverted testimony where circumstances tend to **[*33]** discredit or impeach the testimony).

We hold Moak was required to segregate her attorney's fees, but did not do so. Therefore, Moak did not conclusively

Moak v. Huff

establish the amount of her fees and is not entitled to have judgment rendered in her favor for the full amount of fees she sought. However, because Moak is entitled to recover the reasonable and necessary attorney's fees incurred in defending the TTLA claim and because "unsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be," *Tony Gullo, 212 S.W.3d at 314*, we reverse the judgment in part and remand the cause to the trial court for a new trial on Moak's attorney's fees.

**Conclusion**

We affirm the judgment in favor of Huff on her DTPA claim. However, because the trial court erred in failing to award Moak the fees incurred successfully defending the TTLA claim, we reverse the judgment in part and remand the cause to the trial court for a new trial on Moak's attorney's fees.

Steven C. Hilbig, Justice

**End of Document**